**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CONSTANCE CLARK,                         :
                                         :
              Plaintiff,                 :
                                         :
       v.                                :        C. A. No.12-1116-RGA-MPT
                                         :
                                         :
CAROLYN COLVIN,                          :
Commissioner of Social Security,         :
                                         :
              Defendant.                 :

**REPORT AND RECOMMENDATION**

## I.    Introduction

Plaintiff, Constance Clark ("plaintiff") appeals the decision of Carolyn Colvin, the

Commissioner of Social Security ("defendant"), denying her claim for Social Security

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]

Currently before the court are the parties' cross-motions for summary judgment.

## II.    Jurisdiction

A district court has the jurisdiction to review an administrative law judge's ("ALJ")

decision in a Title II DIB case once it becomes the final decision of the Commissioner.[2]

A decision of the Commissioner becomes final when the Appeals Council either affirms

or denies review of an ALJ decision, or when a claimant fails to appeal the ALJ's

decision within 60 days a unfavorable ruling.[3]

Here, the ALJ's decision is the final decision of the Commissioner because the

---

[1] *See* 42 U.S.C. §§ 401-433
[2] 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.").
[3] *See* 20 C.F.R. § 416.1455; *see also* 20 C.F.R. § 404.905.

Appeals Council denied plaintiff's request for appeal.  Therefore, this court has jurisdiction to review the ALJ's decision.

## III.   Procedural Background

On March 17, 2009, plaintiff filed a Title II application for a period of DIB, alleging her disability began March 13, 2008.[4]  The claim was initially denied on September 24, 2009, and upon reconsideration on November 9, 2009.[5]  Thereafter, plaintiff filed a written request for an administrative hearing on November 16, 2009.[6]

On August 12, 2010, ALJ Melvin D. Benitz held a video hearing to determine whether plaintiff was disabled under §§ 216(i) and 223(d) of the Social Security Act and to determine if the insured status requirements under the same sections were met.[7]  Plaintiff, represented by counsel, testified to her disability.[8]  Also testifying at the hearing was Christina L. Beatty-Cody, an impartial vocational expert ("VE").[9]

After the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Act from March 13, 2008[10] to October 20, 2010, the date the opinion was issued.[11]  The ALJ's decision became final when the Appeals Council denied plaintiff's request for review.

## IV.   Factual Background

Plaintiff was 36 years old at the time of her alleged onset date of disability, March

---

[4] D.I. 11 at 13
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 24.

13, 2008.[12]  By the time of the hearing, she was 39 years of age.[13]  Plaintiff has

consistently alleged an inability to work due to chronic back pain and depression.[14]

### A.    Medical Evidence

Plaintiff is insured for disability benefits until December 31, 2013.[15]  Prior to the

onset of her back pain, plaintiff worked as a machinist for 19 years, from age 18 to 37

years, stopping in March 2008.[16]  The job of a machinist is a skilled position, and is

generally performed at a medium level of exertion, but the VE testified plaintiff performed

her job at a heavy exertion level, often lifting more than 80 pounds and stood

approximately six to eight hours a day while working.[17]

In May 2008, plaintiff reported a three-month history of back pain.[18]  Plaintiff did

not work from March 2008 to May 2008 due to the pain, and was terminated.[19]  On May

28, 2008, she had her initial visit with Dr. Bruce Rudin, who administered injections,

medication, and physical therapy,[20] which only provided minimal relief.[21]  Plaintiff

complained to Rudin that her legs were giving way occasionally, but upon examination,

Rudin observed plaintiff walked with a normal gait and could rise from a sitting position

easily.[22]  Rudin also noted plaintiff had 5/5 strength in her legs and her sensation was

intact.[23]  A lumbar discogram was performed to further evaluate the reported back pain,

---

[12] D.I. 19 at 3.
[13] *Id.*
[14] D.I. 11 at 18.
[15] *Id.* at 2.
[16] D.I. 19 at 3.
[17] *Id.*
[18] D.I. 11 at 18.
[19] D.I. 19 at 3.
[20] D.I. 11 at 18.
[21] D.I. 19 at 3.
[22] D.I. 11 at 18.
[23] *Id.* at 19.

which revealed "essentially normal" discs."[24]   Rudin concluded spinal fusion surgery was not appropriate, explained the risks and encouraged plaintiff to try to "live with" the pain until spinal disc replacement surgery was available at multiple levels.[25]

Dr. James Moran also examined plaintiff in September 2008 to evaluate her back pain.[26]   Moran indicated plaintiff sought treatment to help manage her pain; however, he later learned from another physician that she had a history of drug-seeking behavior.[27] After plaintiff successfully filled a Roxicet (narcotic) prescription, despite having the prescription filled two days prior, Moran discontinued proscribing[28] opioid medications because she violated a medication agreement by testing positive for cocaine and marijuana.[29]

On November 20, 2008, plaintiff met with Dr. Bikash Bose to discuss fusion surgery.[30]   Despite Rudin's recommendation, Bose suggested a two-level diskectomy and spinal fusion.[31]   Plaintiff sought a second opinion on February 2, 2009 from Dr. Kennedy Yalamanchili,[32] who agreed with Bose's course of treatment, and explained the significant risks.[33]   Plaintiff decided to proceed with surgery to reduce her pain.[34]   Surgery occurred in April 2009, and post-surgery examinations indicated the incision was "well healed without swelling around the wound."[35]   Bose only restricted her from driving, and

---

[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] D.I. 21 at 4.
[29] D.I. 11 at 19.
[30] D.I. 19 at 4.
[31] D.I. 11 at 19.
[32] D.I. 19 at 4.
[33] D.I. 11 at 19.
[34] *Id.*
[35] *Id.*

not as a passenger.[36]  He also recommended a follow-up examination two weeks later.

Plaintiff failed to return until 14 months after her initial surgery.[37]  Post surgery, Dr.

Emannuel DeVotta treated plaintiff for pain management; however, DeVotta later

discharged her in August 2009 because she violated the controlled substance

agreement by testing positive for cocaine.[38]

Over the next several months, plaintiff was admitted to the emergency room on

multiple occasions, complaining of severe back pain.  In May 2009, she was hospitalized

for severe low back pain for approximately four days.[39]  In June 2009, plaintiff underwent

right foot surgery with no post operative compilations, except for pain for which Percocet

was proscribed.[40]

A CT scan of her lumbar spine in July 2009 showed the surgical hardware was in

the proper position and the alignment stable.[41]  Plaintiff was hospitalized for lower back

pain and bronchitis in mid-July 2009 for six days.[42]

In November 2009, Dr. Irwin Lifrak, a non-treating physician, performed a

consultative examination for the Disability Determination Service.[43]  Plaintiff's chief

complaint was lower back pain radiating to her left hip and left lower extremity.[44]  Lifrak

concluded plaintiff was capable of lifting up to ten pounds, and able to sit five hours and

stand four hours in an eight-hour work day.[45]  He found no deficits in manual dexterity,

---

[36] D.I. 21 at 6.
[37] *Id.*
[38] *Id.* at 5.
[39] D.I. 19 at 5.
[40] D.I. 11 at 19-20.
[41] *Id.*
[42] D.I. 19 at 5.
[43] D.I. 11 at 20.
[44] *Id.*
[45] D.I. 19 at 5.

normal grip strength, and reduced lumbar range of motion.[46]  His diagnosis was

degenerative joint disease and probable disc damage.[47]  Four days after Lifrak's

examination, Dr. Anne Aldridge, a non-treating non-examining state agency doctor,

completed a Physical Residual Functional Capacity Assessment ("RFC") of plaintiff.[48]

Aldridge estimated plaintiff was capable of lifting twenty pounds occasionally, ten pounds

frequently, and could stand and/or walk for two-hours and sit for six hours in an eight-

hour work day.[49]

Also in November 2009, plaintiff began treatment with Dr. Renato Vesga for pain

management.[50]  Vesga prescribed medications and injections, and carefully monitored

plaintiff's intake of pain medicine.[51]

In December 2009, plaintiff unsuccessfully attempted to return to work[52] as a part-

time deli worker, which was less physically demanding than her prior employment as a

machinist since she could sit, stand, lift lighter objects, and only worked every-other

day.[53]  Plaintiff held this position for approximately two and a half months, but stopped

because of persistent and severe back pain.[54]

In February 2010, plaintiff was treated in the emergency room for complaints of

severe back pain after she fell on her back.[55]  That same month, she lost her medical

---

[46] D.I. 11 at 20.
[47] *Id.*
[48] D.I. 19 at 5.
[49] *Id.* at 5-6.
[50] *Id.* at 6.
[51] *Id.*
[52] *Id.* (referred to as a work attempt, which is a work effort that ends within three months or less due to impairment).
[53] *Id.*
[54] *Id.*
[55] D.I. 11 at 20.

insurance.[56]

In June 2010, plaintiff was hospitalized again for exacerbated back pain, which prevented ambulation.[57]  Plaintiff was given pain medications and instructed to follow-up with Dr. Bose.[58]  Bose determined her severe pain was due to nonfusion of the lumbar vertebrae after the April 2009 surgery.[59]  On July 22, 2010, Bose performed a posterior lumbar exploration and removal of L4-L5 and L5-S1 pedicle screw; L4-L5 bilateral foraminotomies, decompression and neurolysis, and augmentation fusion of L4-L5 and L5-S1.[60]  During this hospitalization, significant narcotic pain medications were prescribed, from which she was weaned before discharge.[61]  At the time of discharge, plaintiff experienced no post operation complications and was ambulating without assistance.[62]

Besides her back problems, the record indicates plaintiff has been diagnosed with depression.[63]  The record shows she reported depression due to her physical condition.[64] In October 2009, Dr. Patricia Lifrak, plaintiff's psychiatrist, diagnosed PTSD, mood disorder NOS, and cocaine dependence, which was in remission.[65]  Lifrak concluded plaintiff had decreased concentration and rated her GAF at 60, which is consistent with moderate symptoms.[66]  Dr. Carlene Tucker-Okine, a State agency medical consultant,

---

[56] D.I. 19 at 6.
[57] D.I. 11 at 20.
[58] *Id.*
[59] D.I. 19 at 6.
[60] *Id.* at 7.
[61] D.I. 11 at 20.
[62] *Id.*
[63] *Id.* at 21.
[64] *Id.*
[65] D.I. 19 at 5.
[66] D.I. 11 at 21.

found in November 2009 plaintiff's mental impairment caused "mild" limitations in her daily life activities, and "moderate" limitations in her concentration, persistence, or pace.[67]

## V.   Administrative Law Hearing

### A.   Plaintiff's Testimony

At the August 12, 2010 hearing, plaintiff testified she was considered a first class machinist and had not worked in that position since March 13, 2008.[68]  Plaintiff explained the March 13, 2008 date corresponded with the date she last worked, and her leave was due to her back pain.[69]  Plaintiff also claimed leg swelling, difficulty standing, problems with walking, which prevented her from working.[70]  In addition, she testified about her back fusion procedure in April 7, 2009.[71]

Plaintiff discussed her attempt to work after the initial surgery as a deli manager, a position she left after two and a half months because it required walking and bending.[72] Because of continued back problems, she underwent a second surgery in July, the month prior to the ALJ hearing, to repair the non-fusion.[73]

Plaintiff further reported she wore a back brace,[74] and used a bone simulator to increase bone growth.[75]  Both were prescribed to promote healing and curb back pain.[76]

---

[67] *Id.*
[68] *Id.* at 33-4.
[69] *Id.* at 34.
[70] *Id.*
[71] *Id.*
[72] *Id.* at 35.
[73] *Id.* at 35-36.
[74] *Id.* at 38.
[75] *Id.*
[76] D.I. 19 at 7-8.

She used the bone simulator for nine months, and the brace until fusion was complete.[77]

Finally, plaintiff testified she completed high school and four years of vocational training to become a first class machinist.[78]

### B.    Vocational Expert's Testimony

Christina Cody, a VE, testified at the hearing.[79]  Cody explained plaintiff employment as a machinist constituted a heavy exertional level, even though most machinists' work is consider a medium exertional level.[80]  She further stated plaintiff had no transferable skills in the machinist industry.[81]  The ALJ posed a hypothetical person like plaintiff at the same age, having the same disability onset date, and education, suffering from the same disabilities, degenerative disk disease and depression, which cause moderate pain, and taking the same medications which provide some relief without significant side effects, for a simple, routine, unskilled job with low concentration and low memory requirements, and who is able to sit for 20-30 minutes at a time and stand for 20-30 minutes at a time, and who can lift 10 pounds frequently and 20 pounds occasionally.[82]  Cody testified there were several jobs within the regional and national economies that that hypothetical person could perform,[83] that is:  (1) an inspector; (2) order caller; (3) hand bander; (4) copy examiner; (5) final assembler; and (6) bench hand.[84]

---

[77] D.I. 11 at 55.
[78] *Id.* at 50.
[79] *Id.* at 63.
[80] *Id.*
[81] *Id.* at 64.
[82] *Id.* at 66.
[83] *Id.*
[84] *Id.* at 66-7.

## VI.   ALJ's Findings

After considering all of the evidence, the ALJ found plaintiff was not disabled

within the meaning of the Act since March 13, 2008, and denied her claim.  His findings

from his October 20, 2010 opinion are:[85]

1.   Plaintiff meets the insured status requirements of the Act through December 31, 2013.

2.   Plaintiff had not engaged in substantial gainful activity since March 13, 2008, the alleged onset date.

3.   Plaintiff had the following severe impairments: degenerative disc disease; and depression.

4.   Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart A, Appendix 1 (20 CFR 404.1520(d), 404.1525 abd 404.1526).

5.   After careful consideration of the entire record, the ALJ found that plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) except: plaintiff retains the ability to perform light and sedentary work activities, which allow her to stand for 20-30 minutes and sit for 20-30 minutes at a time due to moderate pain in her back and legs.  She could lift 20 pounds occasionally and 10 pounds frequently.  Plaintiff had the residual functional capacity to perform work activities that allow her to avoid climbing stairs, ropes, and ladders.  Plaintiff retained the ability to perform simple, routine tasks requiring low concentration and low memory (SVP-2 level) due to moderate symptoms of depression.

6.   Plaintiff is unable to perform any past relevant work (20 CFR 404.1565).

7.   Plaintiff was born on July 20, 1971 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (Exhibit 1D) (20 CFR 404.1564).

8.   Plaintiff has at least a high school education and is able to communicate in English (Exhibit 2E) (CFR 404.1564).

---

[85] *Id.* at 13-24.

9.  Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that plaintiff was "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (20 CFR 404.1569 and 404.1569(a)).

11. Plaintiff has not been under a disability, as defined in the Act, from March 13, 2008, through the date of the ALJ decision (20 CFR 404.1520(g)).

## VII.   Parties' Contentions

### A.   Plaintiff's Position

Plaintiff argues she is entitled to judgement in her favor.  First, she asserts the ALJ  failed to develop the record and, instead, relied upon outdated medical opinions. She contends the duty of the ALJ is to develop the record, making the proceeding inquisitorial rather than adversarial.[86]  She further maintains the ALJ must make "'every reasonable effort to obtain evidence from [plaintiff's] own medical sources' or obtain a consultative examination."[87]  Plaintiff reasons that because her attorney failed to provide an opinion from her treating physicians about her residual functional capacity, and the ALJ compounded the error by failing to obtain such information from her physicians and medical experts, she is entitled to another reveiw.[88]  Because the medical opinions relied on were outdated and did not consider the non-fusion of her vertebrae and her second surgery (Irwin Lifrak and Anne Aldridge opinions), the ALJ should have ordered a

---

[86] *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).
[87] *See* 20 C.F.R. § 404.1512(e)(f); *see also* 20 C.F.R. § 404.1517.
[88] D.I. 19 at 9.

consultative examination of her condition and a thorough review of the updated medical records by a medical expert prior to his decision.[89]

Plaintiff further argues the ALJ arbitrarily relied on Dr. Aldridge's report over Dr. Irwin Lifrak's report, making his decision arbitrary and capricious.[90]  The reports were both composed in early November 2009.[91]  Plaintiff contends that since the two opinions were issued within the same time frame, both are based on insufficient medical information, and unreliable.[92]

Finally, with regard to the under developed record, plaintiff argues the ALJ failed to consider her current medical condition.[93]  Although evidence of her second surgery and continued treatment were presented, the ALJ did not request additional information from her treating physicians or consultative examiners, which resulted in an erroneous RFC and violated agency regulations.[94]

Plaintiff next argues the ALJ failed to explain the weight given to Dr. Yalamanchili's opinion, or why the surgical recovery periods were not included in his hypothetical question to the VE.[95]  Plaintiff reasons to evaluate all medical findings, the ALJ must analyze all relevant evidence and explain the basis for his conclusion.[96]  Plaintiff contends the Third Circuit requires an ALJ to either accept evidence and include it in his opinion, or reject it with an explanation.[97]  Plaintiff asserts the ALJ's opinion

---

[89] *Id.* at 10.
[90] *Id.* at 11
[91] *Id.*
[92] *Id.*
[93] *Id.* at 12
[94] *See Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986); 20 C.F.R. § 404.1512(e), (f); 404.1517
[95] D.I. 19 at 12.
[96] *Id.*
[97] *See Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004).

should have stated whether he accepted Yalamanchili's opinions regarding plaintiff's recovery time and potential improvement rate, and discussed the weight applied to the physician's opinions, or explained why the opinions were rejected.[98]  Because the ALJ cited to Yalamanchili's report, he accepted his opinion at least in part and should have asked the VE about recovery time and the potential for pain improvement in his hypothetical question.[99]

Finally, plaintiff points to new evidence which shows the government doctor upon whose opinion the ALJ relied, had her medical license suspended due to professional misconduct, therefore remand is required.[100]  Plaintiff explains when a claimant relies on evidence not previously before the ALJ, "the district court may remand [the case] to the Commissioner, . . . if the evidence is new and material and if there is good cause why it was not previously presented to the ALJ."[101]

Plaintiff insists the State's disciplinary action against Dr. Aldridge is new, material evidence that the ALJ should consider because it relates to actions happening when DIB denials occurred.[102]  Aldridge's suspension resulted from her prescribing to herself and family members, narcotics which violated medical ethics.[103]  Plaintiff asserts such conduct impunes the reliability of her November 2009 report, mandating remand for consideration of this new evidence.[104]

## B.    Defendant's Position

---

[98] D.I. 19 at 13.
[99] *Id.* at 14.
[100] *Id.* at 16.
[101] *Matthews v. Apfel*, 239 F.3d 589, 592-93 (3d Cir. 2001); 405 U.S.C. § 405(g)
[102] D.I. 19 at 16.
[103] *Id.* at 17
[104] *Id.* at 18

Defendant argues substantial evidence supports the ALJ's finding that plaintiff could work.[105]  Defendant notes the medical evidence demonstrates plaintiff was advised not to undergo surgery for the back pain, and despite her reports of pain, not one of her treating physicians opined she is unable to work,[106] and "[a] lack of medical evidence is very strong evidence that [plaintiff] [is] not disabled."[107]  Defendant submits plaintiff's part-time job, although an unsuccessful work attempt, demonstrates she is not disabled because the regulations recognize the "work. . .that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level."[108]  Since the ALJ acknowledged plaintiff suffered from back pain which caused functional limitations,[109] he limited plaintiff to light and sedentary jobs which accommodated her needs.[110]  Defendant claims "an individual need not be pain free or experiencing no discomfort in order to be found not disabled."[111]

Defendant asserts the ALJ reasonably considered the medical opinions,[112] and maintains "the requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to [plaintiff's] disability."[113]  Plaintiff does not argue insufficient evidence, but that the ALJ failed to further develop the record beyond its over 1,200 pages.[114]

Defendant contends a treating source opinion is not required for a disability

---

[105] D.I. 21 at 7.
[106] *Id.* at 8.
[107] *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004).
[108] D.I. 21 at 9.
[109] *Id.* at 10.
[110] *Id.*
[111] *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).
[112] D.I. 21 at 11.
[113] *Id.*
[114] *Id.*

determination,[115] because determining a plaintiff's RFC is within the province of the ALJ, not a physician,[116] as Third Circuit law recognized "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."[117]

Defendant also relies on the lack of restrictions by plaintiff's treating sources as indicating she is not disabled.[118]  While the absence of such restrictions is not determinable, it is probative.[119]

Lastly, defendant urges the ALJ's reliance on the opinions of Drs. Aldridge and Irwin Lifrak, which did not address plaintiff's second surgery is appropriate since the Third Circuit recognizes "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision."[120]  Further, the Third Circuit acknowledges "Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."[121]

Defendant contends Dr. Yalamanchili's speculative and general statements about a medical procedure are not considered a medical opinion to be weighed because he did not specify plaintiff's functional abilities or individual prognosis.[122]  None of Yalamanchili's comments address plaintiff's response to the operation or the specific activities she could perform,[123] and therefore, the ALJ was not obliged to weigh his report.[124]

---

[115] *Id.*
[116] *Id.*
[117] *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011).
[118] D.I. 21 at 12.
[119] *Thompson v. Halter*, 45 F. App'x 146, 148 (3d Cir. 2002)
[120] *Chandler v. Comm'r of Soc. Sec.*, 664 F.3d 356 (3d Cir. 2011)
[121] *Id.*
[122] *Id.* at 14.
[123] *See McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012).
[124] D.I. 21 at 15.

Finally, defendant argues plaintiff's additional evidence regarding Dr. Aldridge's suspended license is not a basis for remand, since she present no new evidence related to her medical condition, or a new medical opinion. [125]  Rather, the ALJ determined plaintiff's work capacity based on the record as a whole by adopting a completely different work capacity determination than Aldridge recommended.[126]

## VIII.   Standard of Review

### A.   Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[127]  If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[128]

This standard does not change merely because there are cross-motions for summary judgment.[129]  Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[130]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[131]

---

[125] *Id.* at 18.
[126] *Id.* at 18-19.
[127] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).
[128] *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).
[129] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[130] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[131] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

16

Regarding Social Security Benefits matters, this court's review is limited to determining whether the final decision of the Commissioner is supported by substantial evidence.

> Substantial evidence is less than preponderance but more than a mere scintilla.  It is such relevant evidence as a reasonable mind would accept as adequate support for a conclusion.  It must do more than create a suspicion of the existence of a fact to be established . . . it must be enough to justify, if the trial were put to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact to the jury.[132]

The Supreme Court has embraced a similar standard for determining summary judgment pursuant to FED. R. CIV. P. 56:

> The inquiry performed is the threshold inquiry of determining whether there is a need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party . . . .

> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.  If reasonable minds could differ as to the import of evidence, however, a verdict should not be directed.[133]

> Overall, this test is deferential, and we grant similar deference to agency inferences from facts if those inferences are supported by substantial evidence, "even [where] this court acting *de novo* might have reached a different conclusion."

> Furthermore, evidence taken as a whole must be sufficient to support a conclusion by a reasonable person, not just the evidence consistent with the agency's decision.[134]  Thus, a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is the evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes

---

[132] *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).
[133] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (citation omitted).
[134] *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

no evidence but a mere conclusion.[135]

## B.    Disability Determination Standard

### Five-Step Test

The Social Security Administration has established a five-step sequential

evaluation process for determining whether an individual is disabled.[136]

> In step one the ALJ must determine if the claimant is engaged in any substantial gainful activity.  If a claimant is found to be engaged in any substantial gainful activity, the ALJ will find the claimant not disabled.[137]

> In step two, the ALJ must determine if the claimant is suffering from a medically determinable impairment that is severe and meets the durational requirement.  A severe impairment is one that significantly limits a claimant's ability to do basic work activities.[138]  If the claimant does have a severe impairment, the analysis proceeds to the next step.

> In step three, the ALJ determines if a claimant's impairments meets or medically equals the criteria of one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.[139]  If the claimant's impairments meet or equal a listed impairment, the claimant is disabled.  If not, the analysis proceeds to the next step.

> Before continuing to step four, if claimant's impairments do not meet or equal a listed impairment, the ALJ will assess the claimant's residual functional capacity, to be used in steps four and five.[140]

> In step four, the ALJ compares the claimants residual functional capacity to her past relevant work.  If a claimant can still perform past relevant work, then she is not disabled.[141]  If a claimant cannot perform past relevant work, the analysis proceeds to the last step.

> In step five, the ALJ must consider the claimant's impairments, residual functional capacity, age, education, and work experience to determine if

---

[135] *Id.*
[136] 20 C.F.R. § 404.1520(a).
[137] *Id.* at § 404.1520(b).
[138] *Id.* at § 404.1520(c).
[139] *Id.* at § 404.1520(d).
[140] *Id.* at § 404.1520(e).
[141] *Id.* at § 404.1520(f).

the claimant can perform other work.  Here the burden shifts to the ALJ to show that there are other jobs existing in significant numbers in the national economy which the claimant can perform.  The ALJ will often seek the assistance of a vocational expert at this fifth step.[142]

If the ALJ determines a claimant is disabled at any step in the sequence, the analysis ends.[143]

## IX.   Discussion

### A.   Developing the record and reliance on outdated medical opinions

Plaintiff asserts the ALJ did not adequately develop the record before rendering a decision regarding her DIB, relying on outdated medical opinions.  Although the ALJ's role in social security disability benefits cases is to develop the record,[144] that duty does not solely rest with the ALJ.  In Supplemental Security Income (SSI) cases, the ALJ is required to seek additional medical evidence if he believes the evidence presented is inconclusive or unclear.[145]  In cases involving DIB, however, the burden is exclusively on the plaintiff to prove by medical evidence that she cannot return to her past employment.[146]  While other jurisdictions in this circuit have noted a limited duty of the ALJ to develop the record "in cases where the ALJ believes that he or she is lacking information critical to the determination of a factual issue"[147] in both SSI and DIB cases, this court has not previously addressed the issue.  The Third Circuit distinguished these two programs in *Ferguson*, noting specifically that SSI cases require the ALJ to secure whatever evidence he believes is necessary to make a sound determination of whether

---

[142] *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).
[143] *See* 20 C.F.R. § 404.1520(a).
[144] *See Sims*, 530 U.S. at 110-11.
[145] *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3rd Cir. 1985).
[146] *See id.* at n.4.
[147] *Thomas v. Chater*, C.A. No. 95-3194, 1997 WL 256458, at *2-*3 (E.D. Pa. May 9, 1997)

social security income is warranted if the evidence is inconclusive or unclear, while that

burden does not exist in DIB cases.[148]  Relying on the legislative history of Title II and

Title XVI (statute regarding SSI benefits), court found "although the definitions of

disability under both programs are the same, the burden of producing the medical

documentation required to establish disability is not,"[149] because Title XVI's legislative

history provides

> "Your committee recognizes that under a needs program, it would be
> unreasonable to expect a claimant to pay for the medical evidence
> necessary to establish disability or blindness or even to provide the same
> extent of medical documentation required under Title II of the Social
> Security Act.  Thus, the Secretary would be expected to secure the needed
> medical evidence and [sic] the evidence was needed to make a sound
> determination.  Thus, in an SSI case, if there is insufficient medical
> documentation or if the medical documentation is unclear, it is incumbent
> upon the Secretary to secure any additional evidence needed to make a
> sound determination."[150]

Plaintiff incorrectly places the burden of seeking additional evidence regarding her

second surgery and non-fusion on the ALJ, arguing the ALJ was obligated to ferret out

such information.[151]

As evidenced by *Ferguson*, the ALJ is not obligated to obtain a medical opinion or

order a consultative examination of plaintiff, or seek such evidence in DIB cases.  If that

information was so significant, plaintiff should have obtained that material and included it

in the record.  The burdens of production and proof in a disability proceeding rest with

---

[148] *Ferguson*, 765 F.2d at 36 n.4.
[149] *Id.*
[150] *Id.*
[151] D.I. 19 at 10.

20

the claimant.[152]  "When an applicant for social security benefits is represented by counsel

the administrative law judge is entitled to assume that the applicant is making his

strongest case for benefits."[153]

Plaintiff further argues the ALJ arbitrarily relied on Aldridge's outdated medical

opinion when determining her RFC.[154]  Plaintiff contends despite the contemporaneous

timing the Aldridge and Irwin Lifrak's opinions, the ALJ applied significant weight to

Aldridge's report, and gave only moderate weight to Lifrak's opinion.[155]  "In evaluating

medical reports, the ALJ is free to choose the medical opinion of one doctor over that of

another . . . but cannot reject evidence for no reason or the wrong reason."[156]  The Third

Circuit allowed records and opinions much older than Aldridge's and Lifrak's opinions

when determining if there is substantial evidence.[157]

> Because state agency review precedes ALJ review, there is always some
> time lapse between the consultant's report and the ALJ hearing.  The
> Social Security regulations impose no limit on how much time may pass
> between a report and the ALJ's decision in reliance on it.  Only where
> 'additional medical evidence is received that in the opinion of the ALJ . . .
> may change the State agency medical . . .consultant's finding that the
> impairment(s) is not equivalent in severity to any impairment in the Listing,'
> is an update to the report required.[158]

In the instant matter, the ALJ relied on both Aldridge and Lifrak's opinions in

---

[152] 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.).

[153] *Glenn v. Secretary of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).

[154] D.I 19 at 10.

[155] *Id.* at 10, 11.

[156] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3rd Cir. 2009).

[157] *See, e.g., Chandler*, 667 F.3d at 361 ("the records presented to the ALJ were, at most, a few years old"); *Morales v. Apfel*, 225 F.3d 310, 312-3 (3rd Cir. 2000) (upholding a 1997 ALJ decision based on records from 1989-1994); *Hartranft v. Apfel*, 181 F.3d 358, 360-61(3rd Cir. 1999) (finding substantial evidence where the ALJ relied on six-year-old medical records).

[158] *Chandler*, 661 F.3d at 361.

determining plaintiff's RFC.  Though both reports were prepared roughly nine months prior to the hearing, the ALJ was entitled to rely on one opinion over the other, and provided his reasoning in doing so.[159]  Despite plaintiff's arguments, the ALJ incorporated more limitations regarding her work capacity assessment than either opinion suggested.[160]

Finally, *Chandler v. Comm'r of Soc. Sec.* recognizes there are natural, incurable time gaps in the disability adjudicatory framework, which neither violate any regulations, nor warrant remand.[161]

### B.    Failing to explain the weight given to doctors' opinions

Plaintiff also argues the ALJ did not properly weigh Dr. Yalamanchili's opinion regarding her estimated recovery time.[162]  Plaintiff cites Third Circuit case law stating an ALJ must explain the weight and importance of specific medical evidence if accepted, or explain its irrelevance if rejected.[163]  "When making a residual functional capacity determination, 'an ALJ may not reject pertinent or probative evidence without explanation.'"[164]  Controlling weight is usually given to a treating physician's medical opinion, unless it is inconsistent with the substantial evidence of the administrative record.[165]  Although an ALJ cannot arbitrarily select parts of a physician's opinion that support a finding of non-disability, he "is entitled to reject or assign less weight to medical opinions . . . based on factors . . . such as . . . [the] nature and length of the relationship,

---

[159] D.I. 11 at 22.
[160] D.I. 21 at 13.
[161] *Chandler*, 661 F.3d at 361.
[162] D.I. 19 at 12.
[163] *See Ramirez*, 372 F.3d at 554
[164] *Russo v. Astrue*, 421 Fed. App'x 184, 190 (3rd Cir. 2011).
[165] *Id.*

medical specialty, and consistency."[166]  An ALJ must explain his reasons for rejecting a

medical opinion,[167] which must provide a clear and satisfactory basis.[168]  "When a conflict

in evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no

reason or the wrong reason.'  The ALJ must consider all the evidence and give some

reason for discounting the evidence [he] rejects."[169]  An ALJ however, need not proscribe

weight to a general statement by a treating or consulting physician.[170]  Under 20 C.F.R. §

404.1527(a)(2), "medical *opinions* are statements from physicians . . . or other

acceptable medical sources that *reflect judgments* about the nature and severity of [a

patient's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a

patient] can still do despite impairment(s), and [his or her] physical or mental

restrictions."[171]  General statements that do not apply the specific facts regarding  a

patient to the medical knowledge of a physician to develop a prognosis or diagnosis are

typically not considered medical opinions within the meaning of 20 C.F.R.

§ 404.1527(a)(2).[172]

In this case, Yalamanchili's comments regarding the recovery time typical for

plaintiff's surgery do not qualify as medical opinion.  In his letter to Dr. Bose, he states:

> I have advised the patient that while I do agree with the proposed surgical
> treatment planned as provided by Dr. Bose, she should be aware of the
> limitations of *this type* of surgery.  *Approximately 50% of patients* will

---

[166] *Guido v. Astrue*, C.A. No. 11-686, 2012 WL 2403242, at *4 (W.D. Pa. June 26, 2012).

[167] *Id.*

[168] *Bucker v. Astrue*, C.A. No. 12-17, 2012 WL 5392255, at *8 (W.D. Pa Nov. 5, 2012).

[169] *Diaz v. Comm'r of Soc. Sec.*, 410 Fed. App'x 430, 433 (3rd Cir. 2010).

[170] *See e.g. McDonald v. Astrue*, 492 Fed. App'x 875, 884 (10th Cir. 2012) (declining to elevate a statement to medical opinion where it "d[id] not indicate any prognoses [or] provide opinions as to what [the claimant] could still do despite her impairments; *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008).

[171] 20 C.F.R. § 404.1527(a)(2) (emphasis added).

[172] *See Cowan*, 552 F.3d at 1189.

experience any improvement in pain associated with this type of surgery. Furthermore, the surgery itself is extensive, requiring three to six months of recovery and up to a year to see improvements.[173]

This report does not address plaintiff's individual situation or what he expects she will experience after surgery.  It merely reflects what an average person *could* expect regarding recovery time and success.  His comments do not address plaintiff's medical circumstances, and therefore, the ALJ did not error in failing to proscribe weight to Yalamanchili's general medical statement, or for not including it in his hypothetical question to the VE.

### C.    New Evidence

Plaintiff claims the new evidence regarding Aldridge's license suspension is grounds for remand.[174]  Pursuant to 42 U.S.C. § 405 (g), "[t]he findings of the Commissioner of Social Security [in a social security benefits case] as to any fact, if supported by substantial evidence, shall be conclusive."  Section 405 (g) further allows a district court to remand a matter to the ALJ for rehearing if presented with evidence not previously provided to the ALJ:[175]  It specifically states:

> the court may . . . at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.[176]

For evidence to be material, it must be necessary to fully develop the facts of the case, non-cumulative, and essential to a fair hearing.[177]  The evidence "must [also]

---

[173] D.I. 11 at 332 (emphasis added).
[174] D.I. 19 at 16.
[175] *Matthews*, 239 F.3d at 592 (3rd Cir. 2001).
[176] 42 U.S.C. § 405 (g)
[177] *Pilet v. Apfel*, 20 F. Supp. 2d 240, 247 (D. Mass. 1998).

permit the conclusion that the Secretary's final decision might reasonably have been different had the evidence been present at the time of decision."[178]  Further, evidence is material if it "relate[s] to the time period for which benefits were denied, and [does] not concern evidence of a later-acquired disability or of the subsequent deterioration of a previously non-disabling condition."[179]  Good cause exists if the evidence was unavailable at the time of the hearing.[180]

Plaintiff merely contends the case should be remanded due to Aldridge's suspension because her suspension could affect her credibility.  Plaintiff does not assert Aldridge's findings are false, flawed, or lack foundation, and does not question the validity of Aldridge's findings from the consultative examination.  As a result, this additional information is insufficient to warrant remand and further review by the ALJ.  This new evidence is not necessary to develop plaintiff's case factually.  Such purported new evidence does not address the ultimate issue of disability.  At most it may relate to the credibility of one physician, whose opinion was not completely adopted by the ALJ.[181]  Aldridge's suspension and the bases for it are not sufficient to reasonably conclude the ALJ's decision would likely differ had this information been available during the hearing.  Plaintiff does not challenge the content of the report, nor present any contradicting information.  Plaintiff only cites Aldridge's suspension and its alleged potential affect on weight.  Further, Aldridge's suspension does not affect or discount other medical evidence in the record.

---

[178] *Id.*
[179] *Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3rd Cir. 1984).
[180] *Pilet*, 20 F. Supp. 2d at 247.
[181] D.I. 21 at 19.

**X.      Order and Recommended Disposition**

Consistent with the findings contained in the Report and Recommendation,

IT IS RECOMMENDED that plaintiff's motion for summary judgment (D.I. 18) be denied, and defendant's motion for summary judgment (D.I. 20) be granted.

Pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72 (b)(1), and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same.  Any response shall be limited to ten (10) pages.[182]

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated November 16, 2009, a copy of which is found on the Court's website (www.ded.uscourts.gov.)

Date:  July 24, 2013              /s/  Mary Pat Thynge                      
                                          UNITED STATES MAGISTRATE JUDGE

---

[182] FED. R. CIV. P. 72(b)(2).