IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSTANCE CLARK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 12-1116-RGA |
| | : | |
| MICHAEL J. ASTRUE, Commissioner Of Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

The Plaintiff has filed objections (D.I. 24) to a Report & Recommendation of the United States Magistrate Judge. (D.I. 23). The Defendant has responded. (D.I. 25). The matter is now before this Court.

The Magistrate Judge had authority to make the decision pursuant to 28 U.S.C. § 636(b)(1)(B). Objections having been filed, this Court must review *de novo* the objected to determinations of the Magistrate Judge.

After *de novo* review of the parties' submissions, and the Report & Recommendation, and the Complaint, the Court concludes that the objections should be overruled.

The ALJ found that Plaintiff had two severe impairments – degenerative disc disease and depression. The ALJ's analysis of Plaintiff's depression is not at issue. Rather, what is at issue is the ALJ's determination that despite the degenerative disc disease Plaintiff retained the residual functional capacity to perform some light and sedentary work.

Plaintiff's objections may be categorized as raising three issues. One, the propriety of

relying upon the opinions of Drs. Lifrak and Aldridge when their opinions predated Plaintiff's second surgery. Two, whether Dr. Aldridge's subsequent suspension from the practice of medicine requires a remand for further consideration. Three, whether there was error in not considering evidence of limitations relating to the second surgery.

I presume familiarity with the ALJ's opinion and the R&R. Nevertheless, I recap the timeline that frames the issues raised. Plaintiff's disability is alleged to have begun March 13, 2008. She had the first major surgery, a two-level diskectomy and fusion, on April 7, 2009. Dr. Lifrak's report is dated November 6, 2009. Dr. Aldridge's report is dated November 9, 2009. Dr. Aldridge's medical license was suspended from March 2 to June 1, 2010, for failure to document CME. Plaintiff had the second major surgery, a L4-S1 exploration and re-fusion, on July 22, 2010. The ALJ held the administrative hearing on August 12, 2010. The ALJ issued his determination and opinion on October 20, 2010. Dr. Aldridge's license was again suspended beginning January 20, 2011. (D.I. 19-2). It appears, although it is not clear to me, that her license remained suspended until January 8, 2013. She was then placed on two years probation. A reasonable conclusion from the Consent Agreement leading up to the January 8th probation is that Dr. Aldridge had a narcotic drug addiction in 2008 and 2009. It appears as though she has stopped practicing medicine, as the on-line Board of Medical Licensure and Discipline website indicates her license expired March 31, 2013, although she "can renew."

I do not accept the first objection. It is true that Drs. Lifrak and Aldridge rendered their opinions before the July 22, 2010, second surgery, and that it appears that there was no long-term evaluation of the second surgery when the ALJ held the administrative hearing only three weeks later. The Plaintiff was represented by counsel during the administrative process, including at the

administrative hearing. (Tr. 13, 29). The transcript of the hearing does not reveal any request for a continuance. Thus, while it is true that ALJs have a duty to develop the record, it appears here that the ALJ had up-to-date information about the Plaintiff's medical status, and that subsequent events (namely, the second surgery) did not invalidate the opinions given before the surgery simply because it was not known to the doctors in 2009 and therefore could not have been considered by them. *See Chandler v. Commissioner*, 667 F.3d 356, 361 (3d Cir. 2011).[1] The evidence before the ALJ was that the second surgery had been a success. Therefore, I cannot say that relying upon Drs. Lifrak's and Aldridge's opinions was improper. Therefore, I also cannot accept the claim that doing so means the decision was not based on substantial evidence

I do not accept the second objection. This Court could remand the case to the ALJ "upon a showing that there is new evidence which is material." 42 U.S.C. § 405(g). The only dispute here is whether the evidence about Dr. Aldridge is material. The parties and the Report and Recommendation have not cited any case concerning the materiality of evidence that could implicate the credibility of a doctor. My own research has not uncovered a prior relevant case on this specific point. Two points that I consider here are that: (1) generally-speaking, the only person whose credibility the ALJ usually judges is the claimant, who appears and testifies; and (2) Dr. Aldridge's opinions are about the same as Dr. Lifrak's.[2] The ALJ, in making the

---

[1] Despite a prompt decision by the ALJ and relatively timely resolution of this case by this Court, it has been more than three years since the ALJ's hearing and more than four years since the Plaintiff first sought benefits. As the Third Circuit stated in *Chandler*, there will be gaps. There will also be times when further delays are required, but I am not convinced that this was one of them.

[2] Dr. Aldridge: Plaintiff "can lift 20 pounds occasionally and 10 pounds frequently, stand or walk for at least 2 hours and sit for 6 hours in an 8-hour workday." Dr. Lifrak: Plaintiff is "capable of standing for four hours, sitting for five hours and lifting up to ten pounds with either

determinations he made, did not assess the credibility of any of the doctors who provided opinions in the way that finders of fact normally do. Thus, the proffered evidence, which tends to show that Dr. Aldridge is less honest than most doctors, would not, in my opinion, have made any difference to the ALJ's decision. It does not meet the standard for a remand.[3]

I do not accept the third objection.[4] Plaintiff wore a back brace and a bone stimulator at the hearing, something she was doing after the second surgery at her doctor's request. (Tr. 55-56). It appears she was supposed to wear one for nine months and the other until fusion was complete. (Tr. 55). Plaintiff objects that the hypothetical question to the vocational expert did not include the postural limitations associated with the devices. However, as the Commissioner points out, the vocational expert identified a number of jobs in which postural activities (such as climbing, balancing, stooping, kneeling, crouching and crawling) are not present.[5] Therefore, I

---

hand." (Tr. 22).

[3] Plaintiff also refers to due process. Even assuming that this argument is not waived by not having been raised before the Magistrate Judge, Plaintiff cites no case in support of the argument. Thus, if not waived before, I would consider it to be waived now.

[4] Related to this objection is criticism of the ALJ's reference to Dr. Yalamanchili's "second opinion" about having a second surgery. The ALJ included two sentences in his opinion stating Dr. Yalamanchili's general cautions about the proposed surgery. The ALJ does not seem to have relied upon this for anything in particular. It seems to be more general background about the difficult nature of the surgery. I do not believe that citing it meant that the ALJ had to address all or any of the rest of Dr. Yalamanchili's opinions.

[5] For example, "bench hand," DICOT 715.684-026 (Tr. 67), described as sedentary work.

do not believe it was error not to include the back brace and the bone stimulator in the hypothetical question to the vocational expert.

      Therefore, I will adopt the Report and Recommendation.

                                                              */s/ Richard G. Andrews*
                                                             United States District Judge